UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TODD ALLEN OLSON,

                Petitioner,

   v.

MAGGIE MILLER-STOUT,

                Respondent.

Case No. C10-1982-RSL-BAT

**REPORT AND RECOMMENDATION**

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner is currently in the custody of the Washington Department of Corrections pursuant to a 2008 Snohomish County Superior Court judgment and sentence. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his convictions on charges of felony driving under the influence, hit and run, and driving with a revoked license in the first degree. Respondent has filed an answer to the petition together with relevant portions of the state court record, and petitioner has filed a response to the answer. This Court, having carefully reviewed the petition, the briefs of the parties, and the state court record, concludes that petitioner's federal habeas petition should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION - 1

# FACTUAL/PROCEDURAL BACKGROUND

The Washington Court of Appeals summarized the facts relevant to petitioner's convictions as follows:

> On the evening of March 24, 2008 at around 8:00 p.m., Todd A. Olson's car struck the back of Sheikh Demba's car while Demba was stopped at a traffic light in Lynnwood. Olson then backed up and drove away.
>
> Michael Rinkus and Elizabeth Bretland witnessed the collision. Bretland called 911. Rinkus and Bretland followed. Olson was speeding and not stopping for lights.
>
> Olson got out of his car at an apartment complex. After unsuccessfully trying to enter an apartment, he walked around to a back patio. Rinkus followed Olson on foot and did not lose sight of him. Rinkus noticed that Olson's face was red and when Olson was "in close contact, within talking distance, six to ten feet, I could smell somewhat of an odor . . . definitely some kind of intoxication I could smell."
>
> After Lynnwood Police Officer Jacob Shorthill and Officer Kenneth Harvey arrived at the apartment complex, Rinkus identified Olson. Officer Shorthill placed him under arrest. Officer Harvey read Olson his Miranda[1] warnings.
>
> Officer Shorthill observed that Olson had "glassy, watery eyes" and his speech was a little slurred. Officer Harvey said that Olson "was having a hard time balancing and that he was staggering as he walked" and "his eyes were watery and bloodshot in appearance and also droopy in appearance." Officer Harvey also noticed "a medium odor of an alcohol beverage emanating from his mouth as he spoke," and that Olson's face was slightly red.
>
> Olson agreed to take a field sobriety test. Officer Harvey began performing a nystagmus gaze test to determine whether Olson could follow a pointer with his eyes without involuntarily moving his eyes. Officer Harvey had to repeatedly tell Olson to keep his head still during the test. Officer Harvey observed involuntary eye movement. Olson declined to continue taking the nystagmus gaze test or other field sobriety tests.
>
> At the police station, Officer Harvey read Olson the implied consent warning for taking an alcohol breath test. Olson refused to take the breath test.

---

[1]   [Court of Appeals footnote] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

REPORT AND RECOMMENDATION - 2

The State charged Olson with driving while under the influence of intoxicating liquor (DUI) in violation of RCW 46.61.502, hit and run in violation of RCW 46.52.020, and driving while license revoked in the first degree in violation of RCW 46.20.342(1)(a).

Olson filed a motion in limine to exclude the police officers from testifying about whether he was intoxicated because the State did not identify the police officers as expert witnesses. The court granted the motion, but ruled that the officers could testify as lay witnesses about their observations of whether he was intoxicated.

> The state's position is that the intent is to have the officer testify in relation to lay testimony, not expert testimony. Therefore, the question is going to have to be couched in relation to the opinion based upon your observations. In that questioning, there will not be any reference relating to training or expertise for purposes of reaching that conclusion or that opinion.

Officer Harvey, Officer Shorthill, Rinkus, Bretland, and Demba testified at trial on behalf of the State. Olson's defense was that there was no proof his drinking affected his driving. Olson also claimed that the contact between his car and Demba's was very minor and that Demba exaggerated the incident.

Before Officer Harvey's testimony, Olson moved to prevent Officer Harvey from testifying about the results of the nystagmus gaze test. The court ruled that Officer Harvey could testify about what he observed in performing the test, but could not offer his opinion about the results.

> I will permit him to testify to his facts and what he observed in relation to the nystagmus gaze, but I will not permit him to offer an opinion in relation to it.
> So to be clear, in relation to the other argument concerning the basis for his opinions related to intoxication, if the question is going to be asked . . . there's going to have to be a qualifier in the question, "[b]ased upon your observations, excluding the nystagmus gaze test." I will not permit that to be part of the basis for the opinion in relation to intoxication because that is outside the purview, I believe, of a lay witness. That is not something a lay witness would know.[2]

---

[2] [Court of Appeals footnote] The court described the ruling as preliminary, but appeared to confirm the ruling after further argument. "He can't ask that [did he have an opinion as to whether he's intoxicated] in relation to the field nystagmus test."

REPORT AND RECOMMENDATION - 3

During direct examination, the prosecutor asked Officer Harvey whether based on his observations, he had an opinion about whether Olson was under the influence of alcohol, but did not ask Officer Harvey to exclude the nystagmus gaze test from the answer. Officer Harvey testified that he thought Olson was intoxicated. Olson began to object, but withdrew the objection.

> Q Officer, based on your observations of Mr. Olson on that day, did you have an opinion about whether he was under the influence or affected by alcohol?
> A My opinion is that he was intoxicated.
> MR. WACKERMAN: Your Honor, we would – we'll withdraw.
> THE COURT: I didn't hear what you said.
> MR. WACKERMAN: Withdraw the objection.

On redirect, the court sustained Olson's objection to the prosecutor's question about whether Officer Harvey had an opinion about whether Olson's driving was affected by alcohol.

> Q Mr. Wackerman asked you about seeing any driving of Mr. Olson, and you said you didn't see any. Based upon your observations of him, do you have an opinion about whether his driving would be affected by alcohol?
> MR. WACKERMAN: Objection. Calls for speculation.
> . . .
> THE COURT: I'm going to sustain the objection.

The court later stated that it sustained the objection because the question called for an opinion.

At the conclusion of Officer Harvey's testimony, Olson moved for a mistrial based on the officer's opinion testimony about Olson's intoxication. The court ruled that it would have sustained a timely objection to the prosecutor's question that did not exclude the nystagmus gaze test, but that there was no basis for a mistrial because the objection was not timely.

> MR. WACKERMAN: . . . I think the court's ruling was very clear, that in allowing the testimony about the horizontal gaze nystagmus, that the state was allowed to ask the ultimate opinion question about intoxication so long as it was excluding the horizontal gaze nystagmus.
> The state asked the ultimate opinion questions about intoxication and never excluded that from its questions. There was not an immediate objection because I saw that there was no . . . immediate way to –

REPORT AND RECOMMENDATION - 4

> THE COURT: Well there was no objection at all. Then you withdrew it. You made a comment that I didn't hear, and then you said you withdrew it.
> So I don't believe it's appropriate to ask for a mistrial when the objection was not made. If the objection would have been made to the form of the question, I would have sustained the objection because it didn't exclude the nystagmus gaze. But I don't believe the objection was made, and I don't think it's timely made at this time.
>
> Olson argued that an immediate objection would have underscored the problem to the jury. The court ruled that there had been time before Officer Harvey answered the question for Olson to object, just as with the question during redirect about whether Olson's driving was affected.
>
> THE COURT: . . . there was sufficient time in between the time the question was asked and the response was made in which an objection could have been made. So it wasn't a situation where there was no time to make the objection.[3]
>
> The jury convicted Olson as charged with DUI, hit and run, and driving while license revoked in the first degree. . . .

(Dkt. No. 25, Ex. 2 at 2-6.)

Petitioner appealed his convictions to the Washington Court of Appeals. (*See id*., Exs. 3 and 4.) On June 14, 2010, the Court of Appeals filed an unpublished opinion affirming petitioner's convictions. (*Id*., Ex. 2.) Petitioner next sought review of the Court of Appeals' decision in the Washington Supreme Court. (*Id*, Ex. 5.) Petitioner presented the following issue to the Supreme Court for review:

> Due process is violated and a motion for mistrial should be granted when prosecutorial misconduct or improper testimony prejudices the accused. Here, the court ruled that a police officer could testify about his observations of the field sobriety test he administered to Mr. Olson, but could not offer his ultimate opinion of Mr. Olson's intoxication based on that test. The prosecutor elicited the officer's testimony that he believed Mr. Olson was intoxicated, without excluding the impermissible basis as instructed by the court. The court denied Mr. Olson's

---

3 [Court of Appeals footnote] The court also described the prior ruling about Officer Harvey's opinion testimony as "instructions for how to avoid the issue" rather than "an actual ruling."

REPORT AND RECOMMENDATION - 5

motion for a mistrial and the Court of Appeals affirmed. Did this ruling violate Mr. Olson's due process right to a fair and impartial trial under the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 3 of the Washington Constitution, warranting review under RAP 13.4?

(Dkt. No. 25, Ex. 5 at 1.)

On October 6, 2010, the Supreme Court denied review without comment. (*Id.*, Ex. 6.) The Washington Court of Appeals issued its mandate terminating direct review on November 5, 2010. (*Id.*, Ex. 7.) Petitioner now seeks federal habeas review of his conviction.

## GROUNDS FOR RELIEF

Petitioner presents the following ground for relief in his federal habeas petition:

**GROUND ONE:** Trial Courts Violation of Defendents [sic] Due Process

(*See id.* at 5.)

## DISCUSSION

Respondent concedes in his answer to the petition that petitioner has properly exhausted his single ground for relief. Respondent argues, however, that petitioner is not entitled to relief in these proceedings and that the petition should be denied.

### Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was *contrary to*, or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (emphasis added).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

REPORT AND RECOMMENDATION - 6

or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

## Due Process

Petitioner asserts in his petition that his due process right to a fair trial was violated when the trial court denied a defense motion for mistrial after the prosecutor violated a prior court ruling that Lynnwood Police Officer Kenneth Harvey could testify regarding his observations of petitioner during a field sobriety test but could not offer his ultimate opinion regarding petitioner's intoxication based on that test.

Though petitioner presents his claim as one implicating federal constitutional concerns, the question of whether the trial court properly denied the motion for mistrial is essentially a state law issue. And, federal habeas relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)(citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). It is not the province of federal habeas courts to re-examine state court conclusions regarding matters of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). State court procedural and evidentiary rulings are not subject to federal habeas review unless such rulings "violate[] federal law, either by infringing upon a specific constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355, 1357

REPORT AND RECOMMENDATION - 7

(9th Cir. 1995) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). *See also*, *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

The Washington Court of Appeals, in rejecting petitioner's challenge to the trial court's denial of his motion for mistrial, necessarily concluded that Officer Harvey's opinion testimony did not so prejudice the jury as to deny petitioner a fair trial. *See State v. Weber*, 99 Wn.2d, 158, 164-65 (1983); *State v. Escalona*, 49 Wn. App. 251, 254 (1987). The Court of Appeals explained its conclusion as follows:

> Officer Harvey's testimony was based in part on several observations he made concerning whether Olson was intoxicated. Officer Harvey testified that Olson staggered, his eyes were bloodshot, and there was a smell of alcohol on his breath. And although the prosecutor's question about Officer Harvey's opinion as to Olsen's (sic) intoxication failed to exclude the field sobriety test as instructed by the court, neither the question nor the officer's answer drew attention to the field sobriety test.
>
> > Q   Officer, based on your observations of Mr. Olson on that day, did you have an opinion about whether he was under the influence or affected by alcohol?
> > A   My opinion is that he was intoxicated.
>
> On redirect, the prosecutor's questions underscored that Officer Harvey was not testifying as an expert:
>
> > Q   You used the word "intoxicated" to describe Mr. Olson. And that can encompass different things for different people. And I would like you to describe in layman's terms more along the lines of what you meant.
> > A   A better term would be "drunk." I don't know a better term to put it in that's not a technical term.
> > Q   Okay. And that was your observation of Mr. Olson?
> > A   Yes.
>
> In addition to Officer's Harvey's testimony, there was other evidence of Olson's intoxication. Officer Shorthill testified that Olson's eyes were "glassy" and watery, and his speech was slurred. Rinkus testified that Olson's face was red and he could smell an odor suggesting intoxication from over six feet away. And there is no dispute that Olson did not request a limiting instruction.

REPORT AND RECOMMENDATION - 8

The trial court did not abuse its discretion in denying the motion for a mistrial.

(Dkt. No. 25, Ex. 2 at 8-9.)

The transcript of petitioner's trial, which this Court has reviewed in its entirety, amply supports the Court of Appeals' conclusion that Officer Harvey's testimony did not render petitioner's trial so fundamentally unfair as to require a mistrial. Accordingly, petitioner's federal habeas petitioner should be denied.

## Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability.

//

//

//

//

//

//

//

REPORT AND RECOMMENDATION - 9

## CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's federal habeas petition be denied and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

DATED this 9th day of September, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10